Good morning. Ms. Sarf, would you begin your argument, please? Thank you. May it please the Court, good morning. My name is Kristen Sarf, and along with my colleague Heather Robertson, I represent the Appellant Officer Michael Mays. Surrounded by a six-foot fence and prevented from safe escape, Officer Mays had only six seconds to determine whether a growling, advancing, 60-pound pit bull presented an imminent threat. And he had only an additional two seconds to determine whether a second pit bull, 130 pounds, with its mouth open and a snarl, charging, represented an imminent threat. Officer Mays' split-second decision to seize those pit bulls was objectively reasonable as a matter of law and it did not violate a clearly established right. Counsel, is the determination as to whether an officer is experiencing an imminent threat a fact question? No, not necessarily, Your Honor. Obviously, under the objectively reasonable component. Would it be if the facts are in condition? Certainly, there can be fact disputes that would preclude an objectively reasonable or clearly established determination. Here, we aren't even at summary judgment. We're on the pleading stage of this case. Is that correct? Yes, we are at the earliest stage possible where this court is required to fulfill its core obligation of determining a qualified immunity determination at the earliest stage possible. Why is the allegation that the plaintiff puts forth insufficient as a matter of law? There are two guiding principles that I think answer your question, Your Honor. The first is that the standard of review is de novo. And the second is that the U.S. Supreme Court in the Telltab case, which is readily acknowledged in other Eighth Circuit cases, says that the court must consider not just the allegations in the complaint, but all of those materials that go along with the complaint, in particular documents that are incorporated into the complaint by reference, those that are embraced by the complaint, and those that are integral to the complaint. We appear before you, Your Honor, with four sources that were attached to the motion to dismiss. The appellees have never contested that they're embraced by the complaint, that they're integral to the complaint, or that they're incorporated by reference into the complaint. Never have they contested that they are authentic. Never have they contested our characterization of what appears in the videos, nor the contents of the black and white writing of the cops training, nor the contents of the police report. We are here, Your Honor, because the district court legally erred by failing to dismiss that they were clearly embraced and integral to the complaint. Counsel, our jurisdiction in this matter is very narrow, and in order for us to deal with the embraced by the pleadings issue, it has to be inextricably intertwined with the qualified immunity issue. Don't we have different standards and different legal analysis that's necessary to precedent that you need to make a determination regarding qualified immunity at the earliest stage possible? And so on a motion, that means that when you're considering a motion to dismiss, you need to consider not just the allegations, but what is embraced by the allegations in the complaint. And here we have a complaint, and just for the record, the complaint tell you right off the bat that both dogs are pit bulls, both are over 50 pounds, one being 60, the other being 130, and that Officer Mays has no safe means of escape because he's surrounded by a six-foot fence. Counsel, don't they describe the dogs as Staffordshire Terriers? They do, Your Honor. They do, Your Honor, and they do not. It seems you want us to view the facts in the light most favorable to the defendants as opposed in the manner in which the plaintiffs have played the case in the complaint. Your Honor, the home security video is explicitly referenced in the complaint in paragraphs 42, 96- Yes, even assuming it's attached, it's not conclusive. I mean, it's still someone who finds a fact based on an interpretation of the video. Your Honor, the appellees have never contested the appellant's interpretation of the video, and we believe it is incontrovertible in that video that you can see the first pit bull walking towards Officer Mays as he shoots. What I'm pointing to is the interpretation of the dog's actions is a fact question. Actually, Your Honor, I do disagree with that, obviously. We think at a minimum... Well, we put before you the COPS training that's explicitly referenced in three paragraphs of the complaint, and that COPS training tells you that an officer cannot rely on a tail wag, but that it can interpret a slow, stiffly walking dog as preparing to escalate and showing a warning sign. It also tells you that a growling is the clearest warning signal that a dog can give. And so underneath those facts, you would have to ask yourself. That's the black and white content. It seems you're further along in the process, and you may be quite correct that at a later place in the litigation process that a defendant's result is appropriate, but it just seems somewhat premature at the motion to dismiss stage. Your Honor, we have brought videos that have never been contested. The COPS training has never been contested in terms of its authenticity or its content, and the video is not going to change. The fact that the first 60-pound dog was walking towards Officer Mays, that will not change with any amount of discovery. The fact that the second dog that was 130 pounds was running at Officer Mays, that will not change with any amount of discovery. That's on both the home security video, that's on the body-worn camera video. The only thing that the plaintiffs have ever suggested could be modified by virtue of discovery is the issue of whether or not the first dog was growling, because that's in the context of Officer Mays' police report, which is explicitly referenced in two paragraphs of the complaint. What we put before you, Your Honors, is that there's no reasonable prospect or even conceivable prospect that discovery could ever change the fact that the only person that has the foundation to provide information about the sounds being made by the dog is Officer Mays. There was nobody else inside that six-foot fence. You could drag Officer Mays through depositions and bring in the training people for the canine crew in, but it will never change the fact that only Officer Mays has foundation to say what noises that dog was making, and it was growling. The case law, it seems self-evident that if an officer is faced with a 60-pound pit bull that's walking towards him and growling, that the government has an obvious interest in making sure that the officer is safe, and that has never been contested. In fact, it is supported by the cops training that the plaintiff, that the appellees cite in their own complaint. Growling is the clearest warning signal a dog can give, and that fact will not change with any amount of discovery, and so when this court adopts the principle that it needs to make a qualified immunity determination as early stage as possible, it doesn't mean to allow discovery to proceed on the fallacy that someone over the fence or someone inside the house behind locked windows is going to be able to say that their dog wasn't growling. It's not enough. Counselor, are you relying on the Supreme Court's ruling on the case of Brown v. Harris for us to be able to look at the evidence that you want us to look at and conclude that it blatantly contradicts the allegations in the complaint? Yes, Your Honor. So my question is, what authority or precedent is there for applying that case at the motion to dismiss stage rather than a summary judgment? Your Honor, I don't have a specific case where it's but the principle is that you have to consider the facts in the light video depicted by the videotape. Again, there are no witnesses to this incident, so nobody's ever going to come be able to come back and say that the video didn't accurately represent Officer May's encounter with it. Well, for one thing, there's no sound. Is there of a dog growling? You're asking us to confirm that? Yeah, the home security video has no sound. The body-worn camera by standard operation does not have sound for the first 30 seconds. So how can we find that in favor of your party rather than the other? Because the police report and its contents, including how the dogs were approaching Officer Mays, appears in at least two paragraphs in the complaint. Once the documents are embraced by the complaint, you also consider its content. And Officer Mays does put in his report. You're saying just mentioning the police report? Was the police report incorporated by reference in its entirety or just an excerpt? The complaint references the public information section as well as the supplement provided by the police. The police report references how the dogs approached. But, Your Honor, if this were a case, for example, where it was a contract dispute and one allegation was made in the text of the complaint and the contract was supplied to the court for the contract to be interpreted, the court wouldn't say, I won't look at the remaining provisions of the contract. And so that's the analysis that's happening here. The police report, which, again, the authenticity is not disputed, Officer Mays states that the dog was growling at him. And if we move forward with discovery and say it ends up at summary judgment, where, of course, Scott B. Harris has been readily accepted on multiple cases, there's no conceivable prospect that there will be any evidence to counter what your rebuttal time. You can continue to respond if you like, but I just wanted to advise you. I do appreciate that. I will just say that under Bailey v. Schmidt, that case tells your honors that it is objectively reasonable for an officer to seize a dog that is either advancing on or acting aggressively towards an officer. And you know from the allegations in the complaint alone that the first dog was, quote, walking towards Officer Mays, that the second one was presenting itself. And you know from both the home security video and the body-worn camera video that it is incontrovertible that both dogs were, in fact, advancing on Officer Mays. Counsel, that seems to overstate the law. Are you saying that anytime a friendly dog walks towards an officer, he can shoot it? Your honor, the exact quote from, yes, I mean, I'm not suggesting that happens, your honor, but what the language is, is advanced on or acts aggressively. That's the Bailey v. Schmidt decision. That's consistent with the Fourth Circuit's ruling in Altman, where it was objectively reasonable to seize a dog that had been following a meter reader, but was, in fact, walking away from an officer when the officer found it. It's also consistent with the Sixth Circuit's decision in Brown v. Battle Creek, where an officer shot and seized a dog because it was, quote, moving in his direction. Your honor, what the cases repeatedly say is that an officer should not be left in a position where it has to assume that a dog is friendly because signals are not consistent. Dogs can cause fatalities or imminent danger, and it is a significant government interest to protect the officers. And the thing that I would say, your honor, is one of the things that's been bantied about is the fact that the dog was walking towards the officer, but that's consistent with a cop's training that says that when a dog approaches slowly, it may be preparing to escalate, and that a direct gaze while the dog is walking is also a warning signal. And just remind the court that, of course, a running dog is not inherently more dangerous than a walking dog. It has the same teeth. It has the same weight. It has the same propensity to injure. And so what we have here, your honors, is four sources that were clearly and repeatedly referenced in the amended complaint, a district court that put them aside, and I believe that violates the rule that says this court's core responsibility is to reach a qualified immunity determination as soon as conceivably possible. Counsel, before you reserve, what would you say if I toss this out, that a reasonable person looking at the surveillance video would judge the dog as being friendly, wagging its tail, and moving towards the officer in a friendly fashion? Isn't that a possible takeaway from that video, and therefore don't we at least have a question of fact that's going to be up to a fact finder at some point to take the officer's testimony and what the person, the fact finder sees in that video and reach a officer? Because of course the standard isn't a reasonable person. It's what a reasonable officer would do. I'm talking about a reasonable juror, for example, or me. I think I'm a reasonable person. What if I told you I judge that dog is approaching the officer in a friendly fashion with his tail wagging? Don't we have an issue of fact? No, your honor, because the COPS training tells you that a rely upon a wagging tail. It tells an officer, in fact, that a slowly approaching dog may be ready to escalate. And repeatedly on qualified immunity under clearly established, there are repeated cases, Bailey versus Schmidt, Altman versus City High Point, and Brown v. Battle Creek that tells an officer that it would be objectively reasonable and therefore not clearly established that when a dog approaches, walks towards, even walks away, they would be objectively reasonable. And the thing that I would say is I do understand that you would need to accept the police report, but sitting in the safety of my living room, sitting in the safety of your courtroom, that dog looks a lot different when it's growling and when it's 60 pounds and when it's within lunging distance and when there's a six foot fence around. And I don't think it can be said that no reasonably objective officer in six seconds would decide that that dog might not be an imminent threat. It might not be the most prudent, but was it within the range of reasonableness? Thank you, Ms. Sarf. Thank you. Mr. Padden, you're muted. Thank you, Your Honors. Michael Padden on behalf of the plaintiff appellee in this matter. Your Honors, I think the key issue here is whether the court has jurisdiction to address an immunity issue when the appellant has not even filed an answer nor have they created... It's clear here there are numerous factual disputes. And this court dealt exactly with the same type of issue, Your Honors, in the Franklin case, which is noted in our brief, where the city of Minneapolis, this was a case that involved the death of a young African-American male at the hands of MPD officers. And in that case, Your Honors, discovery had been completed and the court decided, the Eighth Circuit, your court decided that it was not appropriate to address immunity issues when there were factual disputes. And that was a case that clearly involved factual disputes. And the ultimate decision was the court didn't have jurisdiction. Here, we don't even have any discovery at all. And I think it's clear that the timing of this is completely inappropriate. It's not a proper appeal. In terms of the facts, you have a situation where the video shows a dog walking towards an officer wagging its tail. I don't think there's anything wrong with bringing an appeal at this point, but the appeal has to be of what has actually happened. And all that's happened is the complaint. So the district court ruled on the sufficiency of the complaint. And now we're being asked to look at the district court's analysis of the sufficiency of the complaint. That seems inappropriate. It seems we would have jurisdiction to do that. Correct, Your Honor. But if it's a matter that you're having to address factual issues and not it's not appropriate for the court to step in and render a decision on the merits and let the case proceed forward. Judge Thunheim specifically addressed those issues, Your Honor, that the counsel made about the video that shows a dog walking towards the officer wagging its tail. And the position that they articulated with Judge Thunheim, Judge Thunheim specifically said that position's absurd. And I quote, he said, the court declines to accept the defendant's invitation to approve a declaration of open season on dogs who merely walk toward the police, close quote. So here, the subjective fear that the officer allegedly had, the question about whether that's an objectively reasonable position is one that would have to be addressed in discovery and presumably with the assistance of experts. So I think we've laid our position out pretty well as to this situation that there are factual disputes. Certainly, Judge Smith, they have the right to bring an appeal, an interlocutory appeal, I guess, whenever they want. But here, it seems that it's a tenuous appeal in the sense that there are numerous factual issues. You know, perhaps if they wish to readdress these with another interlocutory appeal after summary judgment is addressed, I guess they can do that. But would you address the argument that defense counsel makes that the references to video and references to the police reports somehow incorporate them in such a way into the record that those things can be considered at this preliminary stage? And there are cases that where something similar has been done, and I would just like for you to respond as to why that type of precedent would not be appropriate. Well, I think that normally, the court would consider the facts as articulated in the amended complaint. I want to make clear to your honors that we do not have a problem with the facts of this case. We're not trying to avoid the facts. The facts, we feel, are completely supportive of the plaintiff's case, the appellee's case. You know, for example, they contend that the dog was growling. I'll get to your question in a second. I'm just going on a tributary here real quick. They contend the dog was growling. Well, the fact finder is not obligated to accept the uncorroborated contention of Officer Mays that the dog was growling. There's no corroboration for that whatsoever, and this officer has credibility issues. But, your honor, I know there is case law to support the notion that additional evidence could be considered. We believe that that case law should not necessarily be followed, but even if it is followed, even if the court ultimately addresses the question of immunity here, there clearly are factual issues that would be such that that request for dismissing the case at this time should be denied and the case should proceed forward. We're comfortable with the facts of the case. We feel that the timeliness of this appeal is unreasonable. The law does not support their position. They have the right to proceed with the appeal, but Judge Thunheim's decision is well grounded that you have to go through the discovery phase before you deal with substantive appellate issues. It's a well-reasoned opinion. I think your decision here, frankly, your honors, is a relatively easy one, and I think the case should proceed forward. This appeal should be dismissed based on the arguments that have been made, and it's a perfectly valid case. It's a case, I think, that even if they proceed with interlocutory appeal after discovery is done after a failed summary judgment motion, I'm confident that a summary judgment motion would fail, that it should go to a jury. I don't mean to be redundant, your honors, but I think the rationale in the Franklin case is really an important case because it's the same defendant. It's the city of Minneapolis. They did the same thing in that case, and ultimately even with a case that was well beyond the motion to dismiss phase with full discovery in that case, I know that case well because I was the lead counsel for the plaintiff, there were over 40 depositions in that case, and even in that case, the decision was made that the court did not have jurisdiction because the issues that were the underpinning of the appeal were factual issues, not legal ones, and it's really the same thing here. What we're dealing with here is factual issues, not legal ones. Your honors, unless you have any additional questions, I have nothing else to add substantively in terms of my argument. Well, counsel, let me ask this question. Yes, sir. As I understand what the appellant is arguing this morning, it is something along the lines that because the amended complaint makes reference to the video and because the amended complaint makes reference to the way that the officer involved reported this incident with respect to the pit bulls charging at the officer or being aggressive, that kind of thing, that you're stuck with that. Well, I mean, the allegation we made in the amended complaint, your honor, was that the first dog walked toward the officer wagging its tail in what appears to be curious fashion, and then the second dog did not approach the officer until after the first dog was shot. I think that would be, and again, this is the type of thing that would be addressed with experts, how companion dogs respond to situations, but the first dog was shot, and I think it presumably yelped, and that resulted in the second dog coming out of the house. The house was set up in such a way that the dogs could come in and out based on a device that on the side door that would be a normal response for a companion dog if its companion had been shot and yelped. So I think the facts, as I said, your honor, we embrace the facts. We don't have a problem with the facts. I don't want to make it sound like we're trying to ignore the facts here. It's just at this stage of the litigation, one would have to consider whether they should all be considered. If they are considered, and the court certainly has a right to do that, we think the ultimate conclusion, your honor, will be that there are factual disputes here. Your honors, I don't have anything else to add unless there's any more questions. I don't see any additional questions from my colleagues. Thank you, Mr. Patton. You're welcome, your honor. Ms. Sarf, I believe we've pretty much exhausted your time with questions and your replies, but I'll give you a minute to wrap up with anything that you've heard that you'd like to respond to. Grateful, your honor. Why consider the other materials when there are allegations that might be contradictory in the complaint? The Eighth Circuit in Zine versus Fairview Health Services tells you that once a document is embraced by the complaint, the document itself controls. Going to your question, Justice Shepard, I assumed your last question pertained to the first dog. Under this U.S. Supreme Court case of City of Los Angeles versus Menendez, you need to look at each seizure separately. There's no reference to the second 130-pound pit bull that was rushing in two seconds with his mouth open in a snarl, looking friendly in any manner. The district court respectfully made absolutely no reference to any of the video. The video shows a slow approaching pit bull, 60 pounds, then 130 pounds. The content says tail wagging cannot be considered reliable. Slow approach can be equally dangerous. That's qualified immunity under Bailey, Altman, and Battle Creek and the other half a dozen cases cited. Thank you very much. Please reverse and grant qualified immunity. Thank you, Ms. Sarf. The court appreciates both counsel's presence before the court today and the argument that you've provided to us in supplementation to the briefing that you've provided. Thank you.